UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ROBERT MALARCZYK,

                        Plaintiff,

             -v-                              1:19-CV-42

TROOPER ERIC P. LOVGREN,
sued in both their individual
capacity and official capacity as
a Trooper with the New York State
Police, TROOPER BRIAN C.
DIPASQUALE, sued in both their
individual capacity and official
capacity as a Trooper with the New
York State Police, and JOHN DOE
OFFICERS 1-5, Their true names
and identities presently unknown,
acting in both their Official and
Unofficial capacities,

                        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                          OF COUNSEL:

OFFICE OF THOMAS M.                   THOMAS M. GAMBINO, ESQ.
    GAMBINO & ASSOCIATES, P.C.
Attorneys for Plaintiff
222 Church Street
Poughkeepsie, NY 12601

HON. LETITIA JAMES                    MARK G. MITCHELL, ESQ.
New York State Attorney General       Ass't Attorney General
Attorneys for Defendants
The Capitol
Albany, NY 12224

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

## I.  INTRODUCTION

On January 11, 2019, plaintiff Robert Malarczyk ("Malarczyk" or "plaintiff") filed this 42 U.S.C. § 1983 action against defendants New York State Police Trooper Eric P. Lovgren ("Trooper Lovgren"), New York State Police Trooper Brian C. DiPasquale ("Trooper DiPasquale"), and John Doe Officers 1-5 (the "Does").  According to the thirteen-count complaint, Trooper Lovgren and Trooper DiPasquale (collectively "defendants") violated Malarczyk's civil rights by, *inter alia*, conspiring to arrest him.  Dkt. No. 1.

On May 20, 2021, defendants moved for summary judgment under Federal Rule of Civil Procedure ("Rule") 56.  Dkt. No. 27.  Plaintiff has opposed and cross-moved for summary judgment in his own favor.  Dkt. No. 29.  The motions are fully briefed and will be decided on the basis of the submissions without oral argument.

## II.  BACKGROUND

On September 26, 2016, Trooper DiPasquale finished his shift on duty as a New York State Trooper, clocked out, and left the State Police barracks in his personal vehicle.  *See* Defs.' Facts, Dkt. No. 27-15 ¶ 1.  As he drove westbound on State Route 299 in the Town of Lloyd, he saw a vehicle—a blue Mercury

Mountaineer—parked in a driveway close to the road. *Id*. ¶ 2. According to Trooper DiPasquale, he saw the driver of the blue Mercury make a gesture that "appeared to be him possibly smoking a bowl" of marijuana. *Id*. ¶ 3.

Trooper DiPasquale pulled over to the side of the road to see what the driver of the blue Mercury would do next. Defs.' Facts ¶ 4. According to Trooper DiPasquale, the blue Mercury pulled onto State Route 299, drove through "a steady red light" without braking, and then turned abruptly onto New Paltz Road "without signaling, crossing the center line[,] and driving off the roadway onto a dirt patch before reentering the roadway." *Id*. ¶¶ 5–6.

Although he was off duty, Trooper DiPasquale decided to follow the blue Mercury because of its erratic behavior and the possibility that the driver was intoxicated from recent drug use. Defs.' Facts ¶ 7. Trooper DiPasquale also called 911 to make a report. *Id*. According to Trooper DiPasquale, the blue Mercury continued to drive in an erratic or dangerous manner—he observed it cross over the center line multiple times. *Id*. ¶ 8. Eventually, after traveling some distance down the road, the blue Mercury turned into a driveway on Tracy Road and came to a stop. *Id*. ¶ 9.

Trooper DiPasquale parked his personal vehicle behind the blue Mercury, got out, and approached on foot. Defs.' Facts ¶ 10. He observed a man—later identified as Malarczyk— sitting in the driver's seat and a female in the front passenger seat. *Id*. ¶ 11. Although Trooper DiPasquale did not recognize

plaintiff, he did know the passenger: Monika Giaculli. *Id.* ¶¶ 12–13. As Trooper DiPasquale explains, he recognized Ms. Giaculli because "he had responded to prior 911 calls at her residence involving domestic disputes with her mother." *Id.* ¶ 13.

Trooper DiPasquale showed his State Police shield and ID card, identified himself as a police officer, and asked Malarczyk why he was driving erratically. Defs.' Facts ¶ 14. In response, plaintiff opened the driver's door and exited the blue Mercury. *Id.* ¶ 15. As plaintiff did so, "a beer can fell out of the driver's side door onto the ground." *Id.* "Beer spilled out of the can onto the driveway." *Id.* ¶ 16. "Plaintiff immediately picked up the can and threw it into the woods near a garbage can." *Id.* ¶ 17.

In the meantime, fellow New York State Trooper Lovgren had received a call through the 911 dispatcher about Trooper DiPasquale's report of an erratic vehicle. Defs.' Facts ¶ 18. Trooper Lovgren—who was on duty in full uniform and driving a marked police vehicle—responded to the call and arrived at the Tracy Road location at about 4:35 p.m. *Id.* ¶¶ 19–20.

Upon his arrival at the scene, Trooper Lovgren talked to Trooper DiPasquale. Defs.' Facts ¶ 21. Trooper DiPasquale described to Lovgren his observations, including the erratic behavior of the blue Mercury and that he saw a beer can fall out of the driver's door when Malarczyk exited the vehicle

to speak with him.  *Id*.  Trooper DiPasquale also explained to Lovgren how plaintiff had tossed the beer can into the woods nearby.  *Id*.

Next, Trooper Lovgren talked to Malarczyk.  Defs.' Facts ¶ 22.  Plaintiff identified himself and confirmed that he had just driven the blue Mercury from nearby New Paltz.  *Id*. ¶ 23.  According to Trooper Lovgren, plaintiff "had bloodshot, glassy eyes and the odor of alcohol on his breath."  *Id*. ¶ 24. Trooper Lovgren also observed the beer can that plaintiff had thrown away nearby.  *Id*. ¶ 27.

Based on the information he had received from Trooper DiPasquale and his own observations made at the scene, Trooper Lovgren asked Malarczyk to perform some field sobriety tests.  Defs.' Facts ¶ 25.  Plaintiff refused these requests.  *Id*. ¶¶ 25–26.  Trooper Lovgren handcuffed plaintiff and drove him to the police station.  *Id*. ¶ 28.

At the police station, beginning at about 5:08 p.m., Trooper Lovgren asked Malarczyk on at least three occasions to submit to a chemical test to determine the alcohol and/or drug content of his blood and warned him that his refusal to participate in the test would result in the immediate suspension of his driver's license.  *See* Defs.' Facts ¶¶ 29–32.  Plaintiff refused each of these requests.  *Id*. ¶ 32.

Thereafter, Malarczyk was transported to the Town of Lloyd Court where he was arraigned on four traffic charges: (1) driving while intoxicated;

(2) passing a red light; (3) consumption or possession of alcoholic beverages in a motor vehicle; and (4) moving from a lane unsafely.  Defs.' Facts ¶ 34.  After the arraignment, plaintiff was released.  *Id*. ¶ 35.  He did not spend time in jail and he was not required to post bond.  *Id*. ¶ 36.

On October 24, 2016, the New York State Department of Motor Vehicles ("DMV") held an administrative hearing to determine whether Malarczyk's driving privileges should be revoked as a result of, *inter alia*, his refusal to submit to the chemical test in connection with his arrest on suspicion of driving while intoxicated.  Defs.' Facts ¶ 37.

Malarczyk, represented by attorney Daniel Miller, appeared at the DMV hearing.  Defs.' Facts ¶ 38.  Plaintiff chose not to testify.  *Id*. ¶ 41.  However, the administrative law judge ("ALJ") did hear testimony from Trooper Lovgren and Trooper DiPasquale about the traffic stop.  *Id*. ¶ 39.  Plaintiff's attorney also cross-examined both officers while they were under oath.  *Id*. After considering the officers' testimony and other evidence, the ALJ revoked plaintiff's driving privileges.  *Id*. ¶ 43.

On August 8, 2018, the traffic charges that remained pending against Malarczyk proceeded to a jury trial in the Town of Lloyd Justice Court.  Defs.' Facts ¶ 50.  Plaintiff was acquitted.  *Id*. ¶ 53.  This action followed.

III.  **LEGAL STANDARD**

The entry of summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  An issue of fact is material for purposes of this inquiry if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  And a dispute of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In assessing whether there are any genuine disputes of material fact, "a court must resolve any ambiguities and draw all inferences from the facts in a light most favorable to the nonmoving party." *Ward v. Stewart*, 286 F. Supp. 3d 321, 327 (N.D.N.Y. 2017) (citation omitted).  Summary judgment is inappropriate where a "review of the record reveals sufficient evidence for a rational trier of fact to find in the [non-movant's] favor." *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (citation omitted).

"Where, as here, the parties have cross-moved for summary judgment, a reviewing court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *United States v. Bedi*, 453 F. Supp. 3d 563, 570 (N.D.N.Y. 2020) (cleaned up).  "In undertaking this analysis, it bears

noting that a district court is not required to grant judgment as a matter of law for one side or the other." *Id.*

## IV.  DISCUSSION

Malarczyk's complaint enumerates thirteen different claims under federal and state law.  Dkt. No. 1.  Plaintiff asserts federal claims for conspiracy (Counts One and Seven), excessive force (Count Two), false arrest (Count Three), failure to intervene (Count Four), malicious prosecution (also Count Three), supervisory liability (also Count Four), violation of his right to free association (Counts Five and Six), and unlawful search of his person and property (also Counts Five and Six).  *Id.*  Plaintiff also asserts state law claims sounding in negligence (Count Eight), supervisory liability (Count Nine), assault and battery (Count Ten), false imprisonment (Count Eleven), a *prima facie* tort (Count Twelve), and defamation (Count Thirteen).  Plaintiff demands $1 million in compensatory damages and more than $2 million in punitive damages.  *Id.*

As an initial matter, however, there are four issues to be addressed.

### A.  The Does

First, Malarczyk's claims against the Does must be dismissed.  Although the complaint lists "John Doe Officers 1-5" as named defendants in this action, plaintiff "never identified or served" these Does before the close of

discovery.  Defs.' Mem., Dkt. No. 27-16 at 10 n.5.[1]  Nor are these defendants

mentioned in plaintiff's opposition and cross-motion.  *See generally* Pl.'s

Mem., Dkt. No. 29-1.

"Where discovery has closed and the Plaintiff has had ample time and

opportunity to identify and serve John Doe Defendants, it is appropriate to

dismiss those Defendants without prejudice." *Delrosario v. City of N.Y.*, 2010

WL 882990, at *5 (S.D.N.Y. Mar. 4, 2010).

That is precisely the scenario presented in this action.  Accordingly, the

Does will be dismissed without prejudice.  *Kenney v. Clay*, 172 F. Supp. 3d

628, 642 (N.D.N.Y. 2016) ("John Does 1–5 are dismissed from the case for

failure to prosecute, as plaintiff did not identify the John Doe defendants by

the end of discovery.").

## B.  Official-Capacity Claims under § 1983

Second, Malarczyk's § 1983 official-capacity claims against Trooper

Lovgren and Trooper DiPasquale must be dismissed.  Although the complaint

asserts claims for money damages against these two defendants "in both

their individual capacity and their official capacity," it is beyond cavil that an

official-capacity claim for money damages under § 1983 is barred by the

Eleventh Amendment.

---

[1] Pagination corresponds to CM/ECF.

The reason is simple: "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985).  Thus, an official-capacity § 1983 claim against either Trooper-defendant is really a § 1983 claim against New York State, or perhaps the New York State Police.  *See id.*  In either case, the real party in interest—the State or the State Police—would be immune from § 1983 claims for money damages in federal court.  *See, e.g.*, *Forjone v. Dep't of Motor Vehicles*, 414 F. Supp. 3d 292, 300 (N.D.N.Y. 2019) (explaining that Eleventh Amendment immunity bars § 1983 money damages claims against New York State and its constituent agencies).

The typical way to evade this immunity bar is to pursue a claim under *Ex parte Young*, which "permits a suit to proceed against an otherwise immune entity if a plaintiff names a state official in his or her official capacity provided the plaintiff (a) alleges an ongoing violation of federal law and (b) seeks relief properly characterized as prospective." *Morris v. N.Y. State Police*, 268 F. Supp. 3d 342, 360 n.6 (N.D.N.Y. 2017) (cleaned up).

Although Malarczyk tries to invoke this exception in his opposition and cross-motion, the *ad damnum* clause of his complaint seeks only money damages, not injunctive relief, and his claims allege only completed harms, not ongoing ones.  *Compare* Dkt. No. 1 at 16 (seeking money damages), *with* Pl.'s Mem. at 18–19 (citing *Ex parte Young*).

Malarczyk contends that defendants have waived their entitlement to this immunity defense by waiting until the close of discovery to raise it.  Pl.'s Opp'n at 17–18.  But as defendants correctly point out in reply, they pleaded sovereign immunity in their answer.  Dkt. No. 7 ¶ 24.  Nothing more is required.  Besides, a party's entitlement to sovereign immunity goes to subject matter jurisdiction, which is not waivable and may be raised at any time by a party or even *sua sponte* by the Court.  *Morris*, 268 F. Supp. 3d at 359.  Accordingly, the official-capacity § 1983 claims will be dismissed.

## C.  <u>Plaintiff's Failure to Comply with Local Rule 56.1</u>

 Third, the properly supported material facts set forth in defendants' Local Rule 56.1 Statement will be deemed admitted for the purpose of assessing whether their motion for summary judgment should be granted or denied.

Under this District's Local Rules, the party opposing summary judgment is obligated to file a response to the movant's Statement of Material Facts that "mirror[s] the movant's Statement . . . by admitting and/or denying each of the movant's assertions" and, in the case of a denial, setting forth "a specific citation to the record where the factual issue arises."  N.D.N.Y. L.R. 56.1(b) (2021 ed.).

Malarczyk's counsel did not comply with this Local Rule.[2]  *See* Dkt. Nos. 29, 30.  This is so even though his other filings demonstrate that he is clearly aware of its importance on summary judgment.  *See* Dkt. No. 30 (labeling responsive submission as a "Rule 56.1 Statement" and referring generally to a non-movant's obligation to provide the Court with a "counter-statement of facts to Defendants' motion").

There is no excuse for this mistake.  The party-driven procedure for identifying factual disputes that is memorialized in Local Rule 56.1 mirrors the summary judgment practice adopted by every single federal judicial district in the Second Circuit.  *See Alke v. Adams*, 2018 WL 5297809, at *2 (N.D.N.Y. Oct. 25, 2018) (collecting citations to local rules).

And even assuming this omission started out as an oversight, defendants promptly pointed out the error in their reply filing.  Defs.' Reply, Dkt. No. 31 at 3–4.  Plaintiff left it unremedied.  Accordingly, the properly supported facts set forth in defendants' Rule 56.1 Statement shall be deemed admitted for the purpose of assessing their motion for summary judgment.  N.D.N.Y.

---

[2] This is not just a *pro forma* requirement.  *Frantti v. New York*, 414 F. Supp. 3d 257, 284 (N.D.N.Y. 2019).  "A proper response to a movant's statement of material facts streamlines the summary judgment analysis by allocating responsibility for flagging genuine factual disputes on the participants ostensibly in the best position to do so: the litigants themselves."  *LaFever v. Clarke*, 525 F. Supp. 3d 305, 320 (N.D.N.Y. 2021) (cleaned up).  For some reason, though, litigants routinely fail to get this right.  *See, e.g.*, *id*. at 321 (deeming certain facts admitted where non-movant failed to comply with the Local Rule); *Crawley v. City of Syracuse*, 496 F. Supp. 3d 718, 724–25 (same); *Frantti*, 414 F. Supp. 3d at 285 (same); *Carter v. Broome County*, 394 F. Supp. 3d 228, 238-39 (N.D.N.Y. 2019) (faulting both parties for injecting unnecessary confusion into the briefing).

L.R. 56.1(b) (permitting Court to "deem admitted any properly supported facts . . . that the opposing party does not specifically controvert"); *see also* FED. R. CIV. P. 56(e)(2) (permitting same).

### D.  <u>The Facts Set Forth in Plaintiff's Rule 56.1 Statement</u>

As mentioned *supra*, Malarczyk's counsel did submit a document entitled "Rule 56.1 Statement" that purports to serve as a "counter-statement of facts" in response to defendants' motion.  Dkt. No. 30.  Although this filing makes reference to a supporting "affidavit," plaintiff's "Rule 56.1 Statement" does not actually include any citations to such a document.[3]  *See id*.  No such "affidavit" has been filed on the Court's electronic docket in connection with this motion practice.  *See* Dkt. Nos. 29, 30.  And there is no mention of such an "affidavit" in plaintiff's attorney declaration, which describes the exhibits actually being submitted to the Court as part of this motion practice.  *See generally* Gambino Decl., Dkt. No. 29-2.  Accordingly, the citation-less portions of this "Rule 56.1 Statement" offered by plaintiff will be disregarded for the purpose of resolving this motion practice.

The second half of this "Rule 56.1 Statement" does include some paragraphs that are supported with references to *other* documents that have actually been filed as exhibits with the Court.  *See* Pl.'s Facts ¶¶ 33, 36–37,

---

[3]  Indeed, the entire first half of Malarczyk's "Rule 56.1 Statement" is devoid of *any* citations to record evidence.  Pl.'s Facts ¶¶ 1–29.

39–40, 42–45, 47–48.  Defendants, for their part, have properly responded to this document in accordance with the Local Rules by admitting or denying each fact offered by plaintiff and, in the case of a denial, citing to relevant portions of the record.  Defs.' Resp. to Pl.'s Facts, Dkt. No. 31-1.

Upon review, however, the facts offered by Malarczyk (the ones with citations, at least) turn out to be duplicative of defendants' offering or irrelevant to the issues in this case.  For instance, plaintiff makes repeated references to Trooper DiPasquale's 911 call in which he stated to the dispatcher that he had observed plaintiff "lighting a bowl of marijuana" in his vehicle.  Pl.'s Facts ¶ 33; *see also id*. ¶ 40.

This appears to be an attempt by Malarczyk to accuse Trooper DiPasquale of overstating his observations to the 911 dispatcher; *i.e.*, did DiPasquale tell the dispatcher that he definitively saw the driver of the blue Mercury engaged in the consumption of illegal drugs?  All he *really* could have seen for sure was physical behavior by the driver consistent with the possible or likely consumption of illegal drugs.  *See id*. ¶ 43 (characterizing Trooper DiPasquale's subsequent testimony as "contradictory").

But even assuming Malarczyk's encounter with law enforcement qualified as a *Terry* stop, that stop would not have begun until Trooper DiPasquale parked his personal vehicle behind the blue Mercury in the Tracy Road driveway.  At that point, the combined force of the Trooper's own direct

observations—which included the possibility of illegal drug consumption

paired with erratic driving and serial violations of the Vehicle & Traffic

Law—were already more than sufficient to render it lawful at its

inception.  *See, e.g.*, *United States v. Conley*, 342 F. Supp. 3d 247, 261 (D.

Conn. 2018). "[T]he standard for an investigatory stop of a vehicle requires

reasonable suspicion, not probable cause or a preponderance of the

evidence.").

Other facts offered by Malarczyk seem to contextualize the circumstances

leading up to, and the ensuing consequences of, his arrest on September 26,

2016.  However, these facts are also focused on matters that wind up being

irrelevant to the issues in this case.  For instance, plaintiff makes repeated

references to defendants' interactions with Ms. Giaculli.  Pl.'s Facts ¶¶ 37, 39.

But Ms. Giaculli is not a plaintiff in this action.  And apart from his § 1983

conspiracy claim, Malarczyk has not articulated how defendants' conduct

vis-a-vis Ms. Giaculli is at all relevant to any of his federal claims, which

involve alleged infringements of his own constitutional rights.[4]  In short, the

smattering of non-duplicative, relevant, properly supported facts offered by

plaintiff will be considered as part of this motion practice to the extent that

---

[4] To the extent that any of this information about Ms. Giaculli's involvement might relate to the § 1983 conspiracy claim, that will be discussed *infra*.

they do not specifically controvert the facts deemed admitted for the reasons set forth *supra*.

### E.  **Defendants' Motion for Summary Judgment**

Defendants have moved for summary judgment on all of Malarczyk's various claims.  According to defendants, plaintiff's § 1983 claims "are either barred by collateral estoppel or fail to support a triable issue of fact."  Defs.' Mem. at 4.  As for the state law claims, defendants contend that they are time-barred and meritless and that the Court should decline to exercise supplemental jurisdiction over them.  *Id.*

### 1.  **False Arrest** (Count Three)

Malarczyk's complaint asserts a § 1983 false arrest claim, which is grounded in the Fourth Amendment right of an individual to be free from unreasonable seizures.  *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996).

"To establish a claim under § 1983 for false arrest a plaintiff must show that: (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged."  *Jackson v. City of N.Y.*, 939 F. Supp. 2d 235, 248 (E.D.N.Y. 2013) (citation omitted).

"To avoid liability for a claim of false arrest, an arresting officer may demonstrate that either (1) he had probable cause for the arrest, or (2) he is protected from liability because he has qualified immunity."  *Hulett v. City of*

*Syracuse*, 253 F. Supp. 3d 462, 494 (N.D.N.Y. 2017) (quoting *Simpson v. City of N.Y.*, 793 F.3d 259,2 65 (2d Cir. 2015)).

"A police officer has probable cause to arrest when he has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Hulett*, 253 F. Supp. 3d at 494 (cleaned up). "The test for probable cause is an objective one and 'depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest.'" *Id.* (quoting *Yorzinski v. City of N.Y.*, 175 F. Supp. 3d 69, 75 (S.D.N.Y. 2016)).

As an initial matter, defendants contend that Malarczyk's § 1983 false arrest claim is barred by collateral estoppel. Defs.' Mem. at 12–13. As defendants explain, at the October 2016 DMV hearing the ALJ concluded that plaintiff's driving privileges should be revoked because, *inter alia*, Trooper Lovgren had reasonable grounds to believe that plaintiff was driving while under the influence (and that therefore Trooper Lovgren made a lawful arrest on that basis). *Id.* at 12.

"Under either federal law or New York State law, collateral estoppel, or issue preclusion, bars the relitigation of an issue that was raised, litigated, and actually decided by a judgment in a prior proceeding, regardless of whether the two suits are based on the same cause of action." *Cayuga Nation*

*v. Tanner*, 448 F. Supp. 3d 217, 234 (N.D.N.Y. 2020) (quoting *Postlewaite v. McGraw-Hill*, 333 F.3d 42, 48 (2d Cir. 2003)), *aff'd*, 6 F.4th 361 (2d Cir. 2021), *cert. denied sub nom.*, *Tanner v. Cayuga Nation*, 2022 WL 89378 (2022) (mem.).

Collateral estoppel "applies when (1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was [a] full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits." *Flaherty v. Lang*, 199 F.3d 607, 612 (2d Cir. 1999) (quoting *United States v. Hussein*, 178 F.3d 125, 129 (2d Cir. 1999)).

As relevant here, federal courts "give preclusive effect to a state agency's administrative findings if the state's courts would do the same." *Ferraro v. N.Y. City Dep't of Educ.*, 752 F. App'x 70, 73 (2d Cir. 2018) (summary order); *see also Univ. of Tenn. v. Elliott*, 478 U.S. 788, 798 (1986) (characterizing it as "sound policy to apple principles of issue preclusion to the factfinding of administrative bodies acting in a judicial capacity"). "New York courts give quasi-judicial administrative fact-finding preclusive effect where there has been a full and fair opportunity to litigate." *Burkybile v. Bd. of Educ. of Hastings-On-Hudson Union Free Sch. Dist.*, 411 F.3d 306, 310 (2d Cir. 2005).

Upon review, the October 2016 DMV hearing conducted by the ALJ in accordance with New York Vehicle & Traffic Law ("VTL") § 1194 meets this requirement. Malarczyk, represented by attorney Daniel Miller, appeared at the hearing. Defs.' Facts ¶ 38. Plaintiff did not testify. *Id.* ¶ 41. However, the ALJ did hear testimony from Trooper Lovgren and Trooper DiPasquale about the traffic stop. *Id.* ¶ 39. Ultimately, the ALJ found that defendants had "reasonable grounds" to believe that Malarczyk had been driving unlawfully and that Trooper Lovgren's arrest was "lawful." *Id.* ¶ 43.

In response, Malarczyk contends that the findings of the ALJ at the DMV hearing should not have preclusive effect. Pl.'s Mem. at 11. In plaintiff's view, his later acquittal by a jury on the traffic charges in the Town of Lloyd Justice Court should override the preclusive effect of any quasi-judicial administrative determination. *Id.* According to plaintiff, the proper application of estoppel actually warrants summary judgment in his favor. *Id.*

Upon review, this argument must be rejected because it confuses the relevant estoppel question. "The validity of an arrest does not depend on an ultimate finding of guilt or innocence." *Simpson v. Town of Warwick Police Dep't*, 159 F. Supp. 3d 419, 435 (S.D.N.Y. 2016); *see also Kandekore v. Comm'r of Motor Vehicles of State*, 1998 WL 150660, at *2 (S.D.N.Y. Mar. 31, 1998) ("[A] jury determination that an offense was not proven beyond a

reasonable doubt does not, by itself, imply that an officer did not have a reasonable basis to believe that plaintiff committed the offense.").

The relevant issue to be decided for purposes of collateral estoppel is whether probable cause existed for Trooper Lovgren to make an arrest, not whether Malarczyk was ultimately guilty of the one or more of the offenses for which he was charged and later tried. On that more limited issue, the Second Circuit has held that a hearing held pursuant to VTL § 1194 on the issue of probable cause "must be given preclusive effect" in a later § 1983 action. *Zanghi v. Inc. Vill. of Old Brookville*, 752 F.2d 42, 46 (2d Cir. 1985).

Even assuming otherwise, Malarczyk's § 1983 false arrest claim would still fail because the admitted facts establish probable cause.[5] Trooper DiPasquale directly observed plaintiff driving erratically; *i.e.*, he saw plaintiff drive through a "steady red light" without braking, turn abruptly "without signaling," "cross[ ] the center line" multiple times, and even "driv[e] off the roadway onto a dirt patch." Defs.' Facts ¶¶ 5–6, 8. Trooper DiPasquale also directly observed behavior consistent with drug and/or alcohol consumption; *i.e.*, he saw plaintiff make a gesture that "appeared to be him possibly

---

[5] Plaintiff does not directly challenge the initial stop in the Tracy Road driveway. But as noted *supra*, Trooper DiPasquale's own observations would have justified a *Terry* stop, regardless of whether or not he observed the driver of the blue Mercury smoking marijuana or just behavior consistent with the activity.

smoking a bowl" of marijuana" and later, saw an open can of beer spill out of the driver's door and onto the ground. *Id*. ¶¶ 3, 16.

Trooper DiPasquale shared all of this information with Trooper Lovgren when he arrived on the scene. Defs.' Facts ¶ 21. Trooper Lovgren was entitled to rely on this information in assessing probable cause.[6] *See, e.g.*, *Cordero v. City of N.Y.*, 282 F. Supp. 3d 549, 561 (E.D.N.Y. 2017) ("The fellow officer rule, also known as the collective knowledge doctrine, allows one officer to make an arrest based on an instruction or information passed from one officer to another."). Trooper Lovgren was also entitled to rely on his own direct observations, which included the fact that plaintiff confirmed he had just driven the blue Mercury from nearby New Paltz and that he "had bloodshot, glassy eyes and the odor of alcohol on his breath." *Id*. ¶¶ 23–24.

In short, Trooper Lovgren had probable cause to arrest Malarczyk for driving while intoxicated in violation of VTL § 1192(3).[7] *Macshane v. City of N.Y.*, 2015 WL 1298423, at *23 (E.D.N.Y. Mar. 23, 2015) (concluding probable cause existed on charge of driving while intoxicated where arresting officer

---

[6] Probable cause need not exist for the charge "actually invoked by the arresting officer at the time of the arrest." *Devenpeck v. Alford*, 543 U.S. 146, 154 (2004). Instead, an arrest is privileged "if there was probable cause to arrest . . . for any single offense." *Marcavage v. City of N.Y.*, 689 F.3d 98, 109–10 (2d Cir. 2012).

[7] Under New York law, "intoxication" is a degree of impairment "which is reached when the driver has voluntarily consumed alcohol to the extent that he is incapable of employing the physical and mental abilities which he is expected to possess in order to operate a vehicle as a reasonable and prudent driver." *People v. Cruz*, 48 N.Y.2d 419, 428 (1979).

knew plaintiff had been driving that evening and "smelled alcohol" on his breath).  Accordingly, plaintiff's § 1983 false arrest claim must be dismissed.

**2.  <u>Excessive Force</u>** (Count Two)

Malarczyk's complaint asserts a § 1983 excessive force claim.  "The Fourth Amendment prohibits the use of unreasonable and therefore excessive force by a police officer in the course of effecting an arrest."  *Hulett*, 253 F. Supp. 3d at 491 (quoting *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010)).

To succeed on a § 1983 excessive force claim, a plaintiff must show that the defendant's use of force was "objectively unreasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."  *Hulett*, 253 F. Supp. 3d at 491 (cleaned up).  "If the force used was unreasonable and excessive, the plaintiff may recover even if the injuries inflicted were not permanent or severe."  *Id*.

This "objective reasonableness" inquiry is "necessarily case and fact specific and requires balancing the nature and quality of the intrusion on the plaintiff's Fourth Amendment interests against the countervailing governmental interests at stake."  *Hulett*, 253 F. Supp. 3d at 491 (quoting *Tracy*, 634 F.3d at 96).

Thus, review of an excessive force claim is "guided by consideration of at least three factors: (1) the nature and severity of the crime leading to the arrest, (2) whether the suspect poses an immediate threat to the safety of the

officer or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Tracy*, 623 F.3d at 96 (citing *Graham*, 490 U.S. at 396).

"Importantly, a court must evaluate the record from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Hulett*, 253 F. Supp. 3d at 491 (cleaned up). "In so doing, it is important to make allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id*. "Accordingly, police receive a fairly wide zone of protection in close cases involving potential danger, emergency conditions, or other exigent circumstances." *Id*.

Upon review, defendants are entitled to summary judgment on this claim. Malarczyk concedes that he was not "beaten" or otherwise injured by defendants. Pl.'s Mem. at 11. Instead, plaintiff argues that simply being "handcuffed, placed in a patrol vehicle and transported to a police barracks where he was chained to a bench" is sufficient to sustain this claim. *Id*. In plaintiff's view, the arrest itself was unlawful and therefore any use of force to effect it—no matter how slight—was also unlawful. *Id*.

As discussed *supra*, probable cause existed to arrest Malarczyk for driving while intoxicated. So while it is "impermissible to use significant force

against a restrained arrestee who is not actively resisting," *Lennox v. Miller*, 968 F.3d 150, 157 (2d Cir. 2020), it is also true that "the right to make an arrest accompanies with it the right to use some degree of physical coercion," *Moore v. Keller*, 498 F. Supp. 3d 335, 356 (N.D.N.Y. 2020) (cleaned up).  In short, no reasonable jury could find in Malarczyk's favor on this excessive force claim.  Accordingly, plaintiff's § 1983 excessive force claim must be dismissed.

**3.  Malicious Prosecution** (Count Three)

Malarczyk's complaint asserts a § 1983 malicious prosecution claim.  "The elements of a § 1983 malicious prosecution claim require that the plaintiff prove that (1) the defendant initiated a prosecution against the plaintiff, (2) the defendant lacked probable cause to believe the proceeding could succeed, (3) the defendant acted with malice, (4) the prosecution was terminated in plaintiff's favor, and (5) there was a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights."  *Moore*, 498 F. Supp. 3d at 357 (cleaned up).

As with false arrest claims, probable cause is a complete defense to a claim of malicious prosecution.  *See, e.g.*, *Berry v. Marchinkowski*, 137 F. Supp. 3d 495, 536 (S.D.N.Y. 2015).  Unlike false arrest claims, however, probable cause must be assessed for each offense charged.  *Id.*  "Additionally, probable cause is measured at the time of the judicial proceeding, not the time of the arrest,

- 24 -

though if it existed at the time of the arrest it continues to exist at the time of prosecution unless undermined by the discovery of some intervening fact." *Id.* at 537 (cleaned up).

Upon review, defendants are entitled to summary judgment on this claim.  The admitted facts establish that Trooper DiPasquale directly observed Malarczyk run a red light (in violation of VTL § 1111(d)(1)), cross the center line and drive in an erratic manner (in violation of VTL § 1128(a)), and possess and/or consume an alcoholic beverage inside of his vehicle (in violation of VTL § 1127(1)).

Trooper DiPasquale shared all of this with Trooper Lovgren, who was entitled to rely on information he received from a fellow officer.  Trooper Lovgren also independently observed that plaintiff "had bloodshot, glassy eyes and the odor of alcohol on his breath" and heard plaintiff admit to him that he had just been driving the vehicle (in violation of VTL § 1192(3)).

These facts—which are undisputed for the purpose of summary judgment—establish probable cause as to each charged offense at the time of arrest, which is presumed to continue to exist through the time of prosecution unless undermined by the discovery of some intervening fact.  Although Malarczyk accuses defendants of giving false and/or contradictory testimony that eventually led the jury to acquit him of these charges, Pl.'s Mem. 8–10, a favorable termination alone does not amount to the kind of "intervening fact"

that defeats probable cause.  Accordingly, plaintiff's § 1983 malicious prosecution claims will be dismissed.

**4. First, Fifth, & Fourteenth Amendments** (Counts Five and Six)

In Count Five, Malarczyk asserts a § 1983 claim alleging that defendants "deprived Plaintiff of his First and Fourteenth Amendment rights to freely associate with others and to be free from unlawful search and seizure of his personal property."  Compl. ¶ 68.  In Count Six, plaintiff substantially restates this claim, but with a reference to the Fifth Amendment.  *Id*. ¶ 73.

**i. First Amendment**

"The right to free association is 'a right closely allied to freedom of speech and a right which, like free speech, lies at the foundation of a free society.'"  *State Emp. Bargaining Agent Coal. v. Rowland*, 718 F.3d 126, 132 (2d Cir. 2013) (quoting *Shelton v. Tucker*, 364 U.S. 479, 485–86 (1960)).

"The Supreme Court has recognized that the freedom of association takes two forms—the right to engage in 'expressive association[s]' and the right to 'associate with others in intimate relationships."  *Richardson-Holness v. Alexander*, 161 F. Supp. 3d 170, 175 (E.D.N.Y. 2015) (quoting *Adler v. Pataki*, 185 F.3d 35, 42 (2d Cir. 1999)).

"The right of expressive association, while not explicitly set forth in the First Amendment, has been deemed essential to preserving First Amendment freedoms of speech, assembly, and petition."  *Richardson-Holness*, 161 F.

Supp. 3d at 176.  The freedom of intimate association, on the other hand, aims to protect "certain kinds of highly personal relationships from unwanted state interference."  *Id.* (cleaned up).

Broadly construed, Malarczyk has attempted to state the former species of First Amendment claim: a violation of his right to engage in some kind of "expressive association."  As plaintiff tries to explain, he has "clearly been denied [the right] to freely associate" because defendants' arrest led to the loss of his ability to "freely travel, work or associate, and den[ied] him of his liberty interest in his driver's license."  Pl.'s Mem. at 15.

At the outset, this argument sounds more like a due process challenge to the revocation of Malarczyk's driving privileges than any kind of First Amendment "freedom of association" claim.  The viability of plaintiff's claim based on the loss of his driving privileges will be discussed *infra*.  As for plaintiff's "freedom of association" claim, it is clear that he has not marshaled evidence from which a reasonable jury could find in his favor.

First, the admitted facts establish that defendants acted on the basis of probable cause.  *Cf. Morgan v. Cty. of Nassau*, 720 F. Supp 2d 229, 238 (E.D.N.Y. 2010) (holding that probable cause is a complete defense to a First Amendment retaliation claim).  Second, aside from Malarczyk's generalized complaints about the collateral consequences of his arrest, there is no indication that plaintiff suffered any particular chill in his speech or

expressive activity.  *Cf. Crown Heights Shomrim Volunteer Safety Patrol, Inc. v. City of N.Y.*, 2014 WL 4804869, at *7 (E.D.N.Y. Sept. 25, 2014) (collecting cases dismissing First Amendment association claims where private plaintiffs failed to allege that their speech or association was chilled by defendants' conduct).

"It is possible to find some kernel of expression in almost every activity a person undertakes—for example, walking down the street or meeting one's friends at a shopping mall—but such a kernel is not sufficient to bring the activity within the protection of the First Amendment."  *City of Dallas v. Stanglin*, 490 U.S. 19, 25 (1989).  Whatever kernel of expression might be found in the facts of this case, no reasonable jury could conclude that defendants violated a First Amendment right attached to it.  Accordingly, this claim must be dismissed.

## ii. **Fifth Amendment**

As noted *supra*, Malarczyk has also invoked the Fifth Amendment in support of an alleged violation of his right to "be free from unlawful search and seizure of his personal property." Compl. ¶ 68.  Defendants contend that this claim must be dismissed because the Fifth Amendment only applies to the federal government.  Defs.' Mem. at 21.  In opposition, plaintiff argues that this § 1983 claim is viable because defendants arrested and questioned plaintiff without a *Miranda* warning.  Pl.'s Mem. at 15.

Upon review, this claim must be dismissed.  As an initial matter, "[t]he Due Process Clause of the Fifth Amendment applies only to actions by the United States government and federal employees." *Solomon v. City of Rochester*, 449 F. Supp. 3d 104, 113 (W.D.N.Y. 2020) (cleaned up).  Plaintiff has sued state actors, not federal ones, so any § 1983 claim against them would depend on whether the federal protection plaintiff identifies has been incorporated through the Fourteenth Amendment.

Generally speaking, the Supreme Court has held that the Fourteenth Amendment "secures against state invasion the same privilege that the Fifth Amendment guarantees against federal infringement—the right of a person to remain silent unless he chooses to speak in the unfettered exercise of his own will." *Malloy v. Hogan*, 378 U.S. 1, 8 (1964).

And in *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court held that a person must be clearly informed of this right before a custodial interrogation.  Indeed, *Miranda*'s so-called "exclusionary rule" is understood to "sweep[ ]more broadly" than the substantive protection afforded by the substantive Constitutional provision itself.  *Oregon v. Elstad*, 470 U.S. 298, 306–07 (1985).

The problem for Malarczyk is that the Second Circuit has explicitly held that a plaintiff cannot sustain a § 1983 claim on this basis.  "*Miranda* warnings are a procedural safeguard rather than a right explicitly stated in

the Fifth Amendment." *Neighbour v. Covert*, 68 F.3d 1508, 1510 (2d Cir. 1995). "The remedy for a *Miranda* violation is the exclusion from evidence of any ensuing self-incriminating statements." *Id.* "The remedy is not a § 1983 action." *Id.* Accordingly, this claim must be dismissed.

### iii. **Fourteenth Amendment**

Broadly construed, Malarczyk's complaint asserts a due process challenge to the loss of his driving privileges. *See* Pl.'s Mem. at 15 (complaining about defendants' alleged misconduct at the administrative hearing).

The Due Process Clause of the Fourteenth Amendment protects procedural and substantive rights.[8] *Page v. Cuomo*, 478 F. Supp. 3d 355, 370 (N.D.N.Y. 2020). "Procedural due process requires that 'a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Ceja v. Vacca*, 503 F. App'x 20, 22 (2d Cir. 2012) (summary order) (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985)).

As relevant here, "[i]t is well established that a driver's license is a substantial property interest that may not be deprived without due process of

---

[8] To the extent Malarczyk's complaint might be understood to raise a *substantive* due process claim arising out of his arrest, that claim must be dismissed. Substantive due process "does not forbid governmental actions that might fairly be deemed arbitrary or capricious and for that reason correctable in a state court lawsuit seeking review of administrative action." *Natale v. Town of Ridgefield*, 170 F.3d 258, 263 (2d Cir. 1999). The admitted facts fail to establish the kind of "outrageous" or "conscience-shocking" behavior necessary to sustain this claim. *See id.*

law." *Forjone v. Dep't of Motor Vehicles*, 414 F. Supp. 3d 292, 303 (N.D.N.Y. 2019) (quoting *Pringle v. Wolfe*, 88 N.Y.2d 426 (1996)); *see also Gudema v. Nassau Cty.*, 163 F.3d 717, 724 (2d Cir. 1998) (holding that a driver's license is a state-created privilege that cannot be revoked without procedural due process).

Importantly, however, "Article 78 of the New York Civil Practice Law, an amalgam of the common law writs of certiorari to review, mandamus, and prohibition," *Hellenic Am. Neighborhood Action Comm. v. City of N.Y.*, 101 F.3d 877, 881 (2d Cir. 1996), "provides the mechanism for challenging a specific decision of a state administrative agency," *Campo v. N.Y. City Emp. Ret. Sys.*, 843 F.2d 96, 101 (2d Cir. 1988).

Thus, "courts have repeatedly held that the availability of an Article 78 proceeding to challenge the allegedly unlawful or improper revocation or suspension of a driver's license, with or without pre-deprivation notice or a hearing, typically constitutes an adequate procedural remedy." *Forjone*, 414 F. Supp. 3d at 303–04.

There is no dispute that Malarczyk, represented by counsel, participated fully in the DMV's administrative hearing to determine whether or not his driving privileges should be revoked.  To the extent plaintiff seeks to challenge the outcome of that proceeding, his remedy lies in state court.  *See, e.g.*, *Rubin v. Swarts*, 2011 WL 1004838, at *2 (E.D.N.Y. Mar. 18, 2011)

(rejecting § 1983 procedural due process claim because "the proper forum for [plaintiff's] claim that Defendants unlawfully suspended his driver's license without notice is an Article 78 proceeding in New York State Supreme Court"). Accordingly, this claim must be dismissed.

**5. Failure to Intervene** (Count Four)

Malarczyk's complaint asserts a § 1983 failure-to-intervene claim.[9] "It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Jackson v. Tellado*, 295 F. Supp. 3d 164, 173–74 (E.D.N.Y. 2018).

However, "[a] plaintiff cannot succeed on a claim for failure to intervene under § 1983 when there is no underlying constitutional violation." *Kayo v. Mertz*, 531 F. Supp. 3d 774, 799 (S.D.N.Y. 2021). Because plaintiff's § 1983 claims for false arrest, excessive force, malicious prosecution, freedom of association, failure to give a *Miranda* warning, and procedural due process have been dismissed, plaintiff cannot sustain a claim under any "failure to intervene" theory. *Id*. Accordingly, this claim must be dismissed.

---

[9] Plaintiff styles it as a failure to "intercede."

**6.  Supervisory Liability** (Count Four)

Malarczyk's complaint asserts a § 1983 supervisory liability claim.  "[A] supervisor may not be held liable under section 1983 merely because his subordinate committed a constitutional tort."  *Poe v. Leonard*, 282 F.3d 123, 140 (2d Cir. 2002).  Instead, "a plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (cleaned up) (clarifying the "personal involvement" requirement that applies in the context of a § 1983 supervisory liability claim).

Upon review, this claim fails for the same reason set forth *supra*.  Because Malarczyk's § 1983 claims for false arrest, excessive force, malicious prosecution, freedom of association, failure to give a *Miranda* warning, and procedural due process have been dismissed, he cannot sustain a claim for supervisory liability.  *See, e.g.*, *Lawrence v. Evans*, 669 F. App'x 27, 28 (2d Cir. 2016) (summary order) ("Because there is no underlying constitutional violation, [the] supervisory liability claim also fails.").  Accordingly, this claim must be dismissed.

**7.** **Conspiracy** (Counts One and Seven)

Malarczyk's complaint asserts a § 1983 conspiracy claim.[10]  According to plaintiff, this claim is viable because defendants "communicated with each other, formed a plan, [and] unlawfully arrested the Plaintiff and caused damages to him."  Pl.'s Mem. at 13.  In plaintiff's view, Trooper DiPasquale only followed plaintiff because he recognized Ms. Giaculli, who was dating one of DiPasquale's friends at the same time.  *Id.*

"To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors . . . ; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages."  *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999).

Upon review, defendants are entitled to summary judgment on this claim.  As an initial matter, under the "intracorporate conspiracy doctrine" employees of a single corporate entity are legally incapable of conspiring together.  *See, e.g.*, *Chamberlain v. City of White Plains*, 986 F. Supp. 2d 363, 388 (S.D.N.Y. 2013).  This rule extends to § 1983 claims against police departments and law enforcement officers.  *Towns v. Stannard*, 2017 WL 11476416, at *4 (N.D.N.Y. Dec. 20, 2017) (Sannes, J.).

---

[10]  Malarczyk's complaint also asserts a § 1985 conspiracy claim.  In his  opposition memorandum, plaintiff has agreed to withdraw this § 1985 claim.  Pl.'s Mem. at 14.  Accordingly, that claim will be dismissed.

Malarczyk cannot reasonably dispute that it is within the scope of their employment for New York State Police troopers to apprehend motorists who violate the VTL.  Nor has he attempted to do so.  Instead, plaintiff argues that defendants were motivated by an improper purpose unrelated to their work with the State Police.  According to plaintiff, Trooper DiPasquale only followed plaintiff because he recognized Ms. Giaculli, who was dating one of Trooper DiPasquale's friends at the same time.  Pl.'s Mem. at 13.

To be sure, there is an exception to the intracorporate conspiracy doctrine for cases in which "the alleged conspirators are motivated by an improper personal interest separate and apart from that of their principal.  *Townes*, 2017 WL 11476416, at *5.  This exception applies "where law enforcement allegedly exercises their official duties in unconstitutional ways in order to secure personal benefit."  *Chamberlain*, 986 F. Supp. 2d at 388 (cleaned up).

However, this narrow exception does not save Malarczyk's claim.  This is because, as defendants point out, plaintiff has attempted to sustain this conspiracy claim with nothing more than speculation about Trooper DiPasquale's personal motives.  *See, e.g.*, Malarczyk Dep., Dkt. No. 27-2 at 87 ("I don't have facts.  It's speculation.").  "To survive a motion for summary judgment, a plaintiff's evidence of a § 1983 conspiracy must, at least, reasonably lead to the inference that the defendants positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful

plan." *Moroughan v. Cty. of Suffolk*, 514 F. Supp. 3d 479, 529 (E.D.N.Y. 2012) (citation omitted).

Even assuming otherwise, for reasons set forth *supra* Malarczyk has failed to establish an issue of fact as to any of his federal constitutional claims.  In the absence of an underlying constitutional violation, plaintiff "cannot sustain a claim of conspiracy to violate those rights." *Romer v. Morgenthau*, 119 F. Supp. 2d 346, 363 (S.D.N.Y. 2000).  Accordingly, this claim must be dismissed.

### 8. **Supplemental Jurisdiction**

Malarczyk's remaining claims arise under state law.[11]  Federal courts "have supplemental jurisdiction over all other claims that are so related to claims [over which the court has] original jurisdiction that they form part of the same case or controversy."  28 U.S.C. § 1367(a).  In other words, "[t]he state and federal claims must derive from a common nucleus of operative fact." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966); *see also Shahriar v. Smith & Wollensky Rest. Grp.*, 659 F.3d 234, 245 (2d Cir. 2011) (concluding same).

As a general matter, "once it is determined that a supplemental claim is related to the claim within the court's original jurisdiction such that they

---

[11]  The basis for jurisdiction in this forum is federal-question, since the parties are non-diverse.

form the same case or controversy, supplemental jurisdiction over the related claim is mandatory." *Catzin v. Thank You & Good Luck Corp.* 899 F.3d 77, 85 (2d Cir. 2018) (citation omitted).

However, a federal court may decline to exercise supplemental jurisdiction where "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." § 1367(c).

Importantly, though, even if one of the § 1367(c) categories apply, "a district court should not decline to exercise supplemental jurisdiction unless it also determines that doing so would not promote the values articulated [by the Supreme Court] in *Gibbs*: economy, convenience, fairness, and comity." *Catzin*, 899 F.3d at 85 (quoting *Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 214 (2d Cir. 2004)).

"Where, as here, a plaintiff's federal claims will be dismissed before trial, a district court should generally decline to exercise supplemental jurisdiction over any state law claims absent exceptional circumstances." *B.A. v. City of Schenectady Sch. Dist.*, 209 F. Supp. 3d 515, 528 (N.D.N.Y. 2016). There are no exceptional circumstances presented in this case. Accordingly, plaintiff's state law claims will be dismissed without prejudice.

## V.  <u>CONCLUSION</u>

Malarczyk's § 1983 claims must be dismissed because he failed to controvert important facts about his encounter with law enforcement.  Even viewing the additional evidence offered by plaintiff in the light most favorable to him, he has failed to create a jury question on any of his constitutional claims.  Because those federal claims will be dismissed before trial, the Court declines to exercise supplemental jurisdiction over plaintiff's pendent state law claims.

Therefore, it is

ORDERED that

1.  Defendants' motion for summary judgment is GRANTED in part;

2.  Plaintiff's motion for summary judgment is DENIED;

3.  John Doe Officers 1-5 are DISMISSED without prejudice as named defendants in this action;

4.  Plaintiff's federal law claims (Counts One through Seven) against Trooper Eric P. Lovgren and Trooper Brian C. DiPasquale are DISMISSED WITH PREJUDICE; and

5.  Plaintiff's state law claims (Counts Eight through Thirteen) against Trooper Eric P. Lovgren and Trooper Brian C. DiPasquale are DISMISSED WITHOUT PREJUDICE.

The Clerk of the Court is directed to terminate the pending motions, enter

a judgment accordingly, and close the file.

IT IS SO ORDERED.

Dated:  February 8, 2022
        Utica, New York.

David N. Hurd
U.S. District Judge